**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ECO CAPITAL INC., | |
| Plaintiff | |
| v. | Court Number 26-03831 |
| U.S. CUSTOMS AND BORDER PROTECTION, | |
| RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | |
| and | |
| THE UNITED STATES OF AMERICA, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Eco Capital Inc. ("Eco"), by counsel, files this complaint against Defendants U.S. Customs and Border Protection ("CBP"), Rodney S. Scott, in his official capacity as Commissioner of CBP ("Commissioner Scott"), and the United States of America seeking refunds of substantial tariffs imposed upon it purportedly under the International Emergency Economic Powers Act ("IEEPA").

**INTRODUCTION**

1. From February 2025 through April 2025, President Trump, invoking purported authority under IEEPA, imposed new tariffs (the "IEEPA Tariffs") pursuant to several Executive Orders and amended Executive Orders, including:

- Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113, 9114 (Feb. 1, 2025)

- Executive Order 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025)
- Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025)
- Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025)
- Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025)
- Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025)
- Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025)
- Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025)

2. As a result, Eco, as an importer, paid significant amounts in IEEPA Tariffs.

3. Several legal actions were brought challenging the President's authority to levy the IEEPA Tariffs, culminating in the United States Supreme Court's opinion in *Learning Resources,*

*Inc. v. Trump*, 607 U.S. 229 (2026). There, the Court affirmed the United States Court of Appeals for the Federal Circuit's decision in *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) and held that "IEEPA does not authorize the President to impose tariffs" and struck down the IEEPA Tariffs. *Id*. at 255.

4. In *Learning Resources*, the Court further determined that challenges to the IEEPA Tariffs are "within the exclusive jurisdiction" of the Court of International Trade. *Id*. at 240, n. 1.

5. Eco is entitled to a full refund of all liquidated and unliquidated IEEPA Tariffs it has paid.

**PARTIES**

6. Eco is a Texas corporation with its principal office located at 3301 East Deseret Drive, St. George, Utah 84790.

7. CBP is a federal agency under the purview of the United States Department of Homeland Security, with its principal office located in Washington, D.C.

8. Commissioner Scott is the Commissioner of CBP and is named herein in his official capacity only.

9. The United States of America is the recipient of the IEEPA Tariffs paid by Eco and is properly a defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over Eco's complaint pursuant to 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, 607 U.S. at 240, n. 1.

11. Pursuant to 28 U.S.C. § 1585, this court has the same powers as a United States District Court.

12. Pursuant to 28 U.S.C. §§ 2643(a)(1) and (c)(1), this Court is authorized to enter a money judgment against the United States and order any other appropriate relief in civil actions arising under 28 U.S.C. § 1581.

13. Eco has standing to bring this action because it is importer of record for goods imported into the United States from countries subject to the IEEPA Tariffs and paid such wrongful tariffs to the United States, thereby causing Eco injury for which this Court has the sole and exclusive jurisdiction to remedy.

## FACTUAL ALLEGATIONS

### I. The IEEPA Tariffs and Legal Challenges Thereto

14. Between February 2025 and April 2025, the President issued a series of executive orders and amended executive orders imposing tariffs on imported goods from Canada, Mexico, China, and eventually virtually worldwide, purportedly under authority of IEEPA, including the following:

- On or about February 1, 2025, the President issued Executive Order 14193, which imposed an additional 25% tariff on imports from Canada.
- Also on or about February 1, 2025, the President issued Executive Order 14194, which imposed an additional 25% tariff on imports from Mexico.
- Also on or about February 1, 2025, the President issued Executive Order 14195, which imposed an additional 10% *ad valorem* tariff on imports from China.
- On or about February 11, 2025, the President issued Executive Order 14200, which amended Executive Order 14195.

- On or about March 7, 2025, the President issued Executive Order 14228, which further amended Executive Orders 14195 and 14200 and raised the incremental tariff on imports from China to 20%.
- On or about April 7, 2025, the President issued Executive Order 14257, which imposed a 10% baseline tariff on nearly all imports into the United States and reciprocal tariffs ranging from 11% to 50% on imports from some 57 countries.
- On or about April 14, 2025, the President issued Executive Order 14259, which raised the reciprocal tariff rate on imports from China from 34% to 84%.
- On or about April 15, 2025, the President issued Executive Order 14266, which suspended for 90 days the higher country-specific tariffs on all countries except China. Regarding China, Executive Order 14266 raised the reciprocal tariff on imports from China to 125%.

15. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

16. On April 14, 2025, a group of plaintiffs filed suit in this court to challenge the legality of these executive orders and corresponding IEEPA Tariffs. *See V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (DN 2).

17. On May 28, 2025, this court held that the challenged executive orders and corresponding IEEPA Tariffs were unlawful. *See id.* at DN 55-56.

18. On August 29, 2025, the Federal Circuit affirmed this court. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

19. On February 20, 2026, the Supreme Court affirmed the Federal Circuit. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

20. In the months following the filing of the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

21. CBP continued to collect duties imposed by the challenged executive orders during the pendency of the litigation challenging them.

22. On February 22, 2026, CBP announced that duties imposed under the challenged executive orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026).

23. Eco seeks relief because of all duties it has paid or will pay because of the IEEPA Tariffs struck down by the Supreme Court in *Learning Resources*.

## II. Tariff Collection and Liquidation

24. Pursuant to 19 U.S.C. §§ 1500 and 1502, CBP is charged with the assessment and collection of duties, including the IEEPA Tariffs.

25. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988).

26. Pursuant to 19 U.S.C. § 1202, CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. The primary headings of the HTSUS describe

broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category.

27. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

28. Pursuant to 19 U.S.C. §§ 1202, 3005, and 3006, the United States International Trade Commission publishes and maintains the HTSUS consistent with presidential orders. *See also Michael Simon Design, Inc. v. United States*, 637 F. Supp.2d 1218, 1225 (Ct. Int'l Trade 2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F.Supp.3d 1365, 1378–79 (Ct. Int'l Trade 2021).

29. Pursuant to 19 U.S.C. §§ 1202, 1500, and 1502, when goods enter the United States, CBP is responsible for assessing and collecting tariffs on those goods after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS.

30. Pursuant to 19 C.F.R. § 159.1, "liquidation" means "the final computation or ascertainment of duties on entries for consumption or drawback entries."

31. Pursuant to 19 U.S.C. § 1484, when goods enter the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods.

32. Pursuant to 19 U.S.C. § 1500, CBP then reviews the customs declaration, may inspect the goods, and fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods.

33. Pursuant to 19 U.S.C. § 1504(b), once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund.

34. Pursuant to 19 U.S.C. § 1504(a), liquidation must happen within one year unless extended.

35. Pursuant to 19 C.F.R. § 159.9, CBP typically liquidates entries 314 days after the date of entry of the goods, referred to as the automatic liquidation cycle, and will post a notice on its website.

36. Pursuant to 19 U.S.C. § 1504(b)(2) and 19 C.F.R. § 159.12(a)(1)(ii), CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause.

37. Pursuant to 19 U.S.C. § 1514.2, once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties.

38. Pursuant to 19 U.S.C. § 1514.2, not all liquidations are protestable. Where CBP acts in a ministerial capacity (i.e., without discretion) in imposing a duty, the entry's liquidation cannot be protested. *See also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

39. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, 813 F.Supp.3d 1298 (Ct. Int'l Trade Dec. 15, 2025), a three-judge panel confirmed the authority of the Court of International Trade to reliquidate entries subject to the IEEPA duties.

40. In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful."

*Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, Case 25-078, DN 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

**III. The Supreme Court Strikes Down the IEEPA Tariffs and Remands to the CIT**

41. After granting certiorari in both cases, the Supreme Court consolidated *V.O.S. Selections* with *Learning Resources, Inc. v. Trump*, which originated in the United States District Court for the District of Columbia.

42. On February 20, 2026, the Supreme Court issued its opinion in the consolidated case as *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). There, it held that "IEEPA does not authorize the President to impose tariffs" and invalidated the IEEPA Tariffs. *Id*. at 255.

43. On remand to the CIT, on April 17, 2026, Judge Richard Eaton ordered:[1]

> [W]ith respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties.

*V.O.S. Selections, Inc., et al. v. Trump, et al.*, Case 25-00066, DN 82 at 3 (Ct. Int'l Trade Apr. 17, 2026).

44. The government has taken the position that with regards to entries that have been fully liquated subject to IEEPA duties, "CBP has no authority to reliquidate or refund money without a court order." *Id*. at DN 88, p. 2 (Ct. Int'l Trade May 29, 2026) (citations omitted). The government further argues that "refunds for such imports must be handled through importer-specific orders requiring reliquidation once CBP has completed programmatic changes for other

[1] While the Supreme Court did not directly order remand to the CIT, its decision affirmed the Federal Circuit's decision, which vacated the injunctive relief previously ordered by the CIT and ordered remand to the CIT so that it could reconsider the propriety of "granting injunctive relief and the proper scope of such relief." *V.O.S. Selections, Inc.* v. *Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025). The Federal Circuit stayed its mandate pending the Supreme Court's decision, and ordered that no further proceedings should occur in the CIT until the Federal Circuit's mandate issued. *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812, Dkt. No. 161 at 3 (Fed. Cir. June 10, 2025).

categories of refunds the Court has directed it to prioritize." *Id*. The government concludes that the CIT incorrectly ordered it to "reliquidate final entries including entries made by importers who have not sued in this Court." *Id*. at 3. The government has now appealed the CIT's April 17, 2026 order. *See V.O.S. Selections, Inc. v. Trump*, Appeal 26-1895 (Fed. Cir. filed June 2, 2026).

## IV. Eco Has Paid IEEPA Tariffs

45. The goods Eco imports into the United States that are subject to the IEEPA Tariffs entered under new HTSUS codes from countries subject to the IEEPA Tariffs.

46. Eco has paid significant sums in IEEPA Tariffs on those entries.

## COUNT I
## Refund of Unlawful IEEPA Tariff Payments

47. Eco incorporates the allegations set forth above as if fully restated herein.

48. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose the IEEPA Tariffs and held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq.*, when he imposed such tariffs on imported goods.

49. The Supreme Court held that all IEEPA Tariffs are unlawful. Notably, the Supreme Court stated that while it was not tasked "to set forth the metes and bounds of the President's authority to 'regulate . . . importation' under IEEPA," its task was instead "to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, 607 U.S. at 643-44.

50. The IEEPA Tariffs purport to impose duties and modify the HTSUS solely under IEEPA.

51. CBP has stated in a public filing that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Defendants-Appellants Motion for an Emergency Stay

Pending Appeal & an Immediate Administrative Stay at 25, *V.O.S. Selections, Inc. v. Trump*, Appeal No. 25-1812 (Fed. Cir. May 29, 2025), DN 6.

52. Pursuant to the Supreme Court's decision in *Learning Resources* and the other authorities cited herein, this court should order the United States to refund to Eco all IEEPA Tariffs paid by Eco, with interest as provided for by law.

**REQUEST FOR RELIEF**

Eco respectfully requests that the Court of International Trade:

A. Order CBP to reliquidate all of Eco's entries that have been liquidated with IEEPA Tariffs without imposition of IEEPA Tariffs;

B. Order CBP to liquidate all of Eco's unliquidated entries that are subject to IEEPA Tariffs without imposition of IEEPA Tariffs;

C. Order the United States to refund to Eco the IEEPA Tariffs collected from Eco on all entries subject to the IEEPA Tariffs, with interest as provided for by law;

D. Award Eco its reasonable costs and attorneys' fees incurred in bringing this action;

E. Grant Eco all other appropriate relief.

Respectfully submitted,

**FBT GIBBONS LLP**

*/s/ Brad S. Keeton*
Brad S. Keeton
325 West Main Street, Suite 301
Lexington, KY 40507
Tel.: 859.231.0000
bkeeton@fbtgibbons.com

*Counsel for Plaintiff Eco Capital Inc.*